## CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**BRIAN J. CASEY**      *
**SHERYL A. CASEY**      *

      *

     *Individually and on Behalf of A*    *
     *Class of Similarly Situated Persons*   *

      *

     Plaintiffs       *

v.           *

      *      Case No. _____

**LITTON LOAN SERVICING LP**    *
2711 Centerville Road, Suite 400    *
Wilmington, DE 19808     *

      *

     SERVE ON:      *
     CSC-Lawyers Incorporating Service   *
       Company, Resident Agent    *
     7 St. Paul Street, Suite 1660    *
     Baltimore, MD 21202     *

      *

     Counter Defendant     *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

Brian J. and Sheryl A. Casey ("Named Plaintiffs" or "the Caseys"), individually and on behalf of a class of people similarly situated, hereby sue Litton Loan Servicing LP ("Defendant" or "Litton") and for cause state:

1. The Defendant has filed and prosecuted illegal foreclosure actions against the Named Plaintiffs and class members. The actions are illegal because papers filed in the foreclosures are "robo-signed" and fraudulent; or because the foreclosures violate the mandatory legal requirements of Maryland's foreclosure laws and rules of procedure.

2. Plaintiffs are members and representatives of the "Class" (as defined in ¶ 63 below) which consists of Maryland residents that Litton, through its authorized attorneys and/or Substitute Trustees in Maryland initiated foreclosure proceedings against Plaintiffs by using improper and deceptive papers which were robo-signed and false—in other words what the papers submitted by Litton's agents to Maryland courts were not what they purported to be and were frauds on the court.

3. Plaintiffs have also been harmed by Litton individually by failing to provide Plaintiffs with (i) prompt and accurate accountings of the amount owed when sought from Defendant, (ii) timely information of their loss mitigation options and services offered by the Defendant before the commencement of the foreclosure action; or (iii) failed to provide loss mitigation when possible.

4. The systemic problems identified herein are equally troubling since Litton has received an infusion of government cash from taxpayers, like the Caseys, to provide incentives to participate in the Making Home Affordable Program of the U.S. Treasury Department. Upon information and belief the taxpayers' presently have paid more than a $33 million stake in Litton through incentive payments paid by the U.S. Department of Treasury. This belief is based upon public reports made to Congress found at http://www.treasury.gov/initiatives/financial-stability/briefing-room/reports/105/Documents105/December105%28a%29%20report_FINAL_1.24.pdf.

5. These unfair and deceptive acts by Litton constitute violations of the MARYLAND CONSUMER PROTECTION ACT ("MCPA"), MARYLAND CONSUMER DEBT

COLLECTION ACT ("MDCDCA"), MARYLAND MORTGAGE FRAUD PREVENTION

ACT ("MMFPA") and the common law of Maryland.

## JURISDICTION & VENUE

6. This court has jurisdiction in this proceeding pursuant to MD. ANN. CODE, CTS. & JUD. PROC. § 1-501.

7. Venue in this Court is appropriate since Defendant routinely initiates, through its network of authorized attorneys or Substitute Trustees, foreclosure actions against Maryland homeowners, including the Caseys, in this Court. MD. ANN. CODE, CTS. & JUD. PROC. § 6-201.

8. Venue in this Court is also appropriate since the claims arise out of dealings concerning real property located at 407 Cedarcroft Road, Baltimore, Maryland. MD. ANN. CODE, CTS. & JUD. PROC. §§ 6-201 – 6-204.

## PARTIES

9. Brian J. and Sheryl A. Casey are residents of the State of Maryland and the owners of the real property commonly known as 407 Cedarcroft Road, Baltimore, Maryland ("the Property").

10. Defendant Litton Loan Servicing LP ("Litton") is a foreign limited partnership from the State of Delaware registered to do business in the State of Maryland and with corporate offices located at 2711 Centerville Road, Suite 400, Wilmington, DE 19808 and 4828 Loop Central Drive, Suite 600, Houston, TX, 77081. Litton is licensed as a mortgage lender/servicer by Maryland's Commissioner of Financial Regulation at the Department of Labor, Licensing, and Regulation (License Numbers 14239, 18408, and 14263).

## FACTS

**A.**      **THE FORECLOSURE CRISIS**

11. Over the last four years, Maryland and the United States has been in a foreclosure
    crisis.  Recent news reports have established that one in ten American homes is at
    risk of foreclosure.

12. The number of Maryland properties with foreclosure filings in has increased
    substantially throughout the last four years.

13. Increased foreclosures have a detrimental effect not just on the borrowers who
    lose unique property and face homelessness, but also on the surrounding
    neighborhoods that suffer decreased property values and municipalities that lose
    tax revenue.

14. The foreclosure crisis is not over.  Economists predict that interest rate resets on
    the riskiest of lending products will not reach their zenith until sometime in 2011.
    *See* Eric Tymoigne, Securitization, Deregulation, Economic Stability, and
    Financial Crisis, Working Paper No. 573.2 at 9, Figure 30 *available at*
    http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1458413 (citing a Credit
    Suisse study showing monthly mortgage rate resets).

15. Since the commencement of the crisis, revelations of bogus, false, and deceptive
    "robo signing" have come to light involving national lenders and mortgage
    servicers.  In Maryland the illegal "robo-signing" issue has even come to the
    forefront because attorneys and substitute trustees, including those acting on
    behalf of Litton in the Caseys' illegal foreclosure action (discussed below) have

4

admitted that they filed bogus documents in hundreds of foreclosure cases filed in state courts.

16. On or about November 7, 2008, Governor Martin O'Malley entered an agreement with Litton which became part of the solution for distressed homeowners in Maryland. The agreement requires Litton to promptly respond to homeowners seeking information about their mortgage accounts. In the agreement, Litton agreed to a time line for loss mitigation including but not limited to acknowledging receipt of a loss mitigation package within five (5) days of receipt, confirming that the package is complete within ten (10) days of acknowledging its receipt, and making a decision regarding the nature and extent of loss mitigation with sixty (60) days.

## B.    MARYLAND'S RESPONSE TO THE FORECLOSURE CRISIS

17. In 2007 at the beginning of the crisis, Governor O'Malley convened a task force of representatives to address the crisis that was then underway. The Maryland Maryland Homeownership Preservation Task Force produced a report which aptly summarized the devastating effect of foreclosures on the community as follows:

Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of

foreclosures in Chicago in 2005 estimated that a single foreclosure costs city government up to $5,000 or more.

Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.

Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure, according to information from St. Ambrose Housing Aid Center, Inc. The banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report at 12 (November 29, 2007) *available at*

http://www.gov.state.md.us/documents/HomePreservationReport.pdf (footnotes omitted).

18. To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court. *See Id.* at 40-43. Included among these was a specific recommendation, which included the adoption of a good faith and fair dealing standard of care for Maryland licensed mortgage entities. *Id.* (recommendation 7.3).

19. In response to the expanding foreclosure crisis and the Task Force Report, the General Assembly introduced and passed several bills during the 2008 legislative session to change Maryland's foreclosure process and curb certain predatory real

estate processes. These bills were passed with nearly complete bi-partisan

support. As summarized in the General Assembly's 90 Day Report for the 2008

session:

Until [2008], Maryland's foreclosure process, from the first foreclosure filing to final sale, had been among the shortest in the nation. Maryland is a quasi-judicial State, meaning that the authority for a foreclosure sale is derived from the mortgage or deed of trust, but a court has oversight over the foreclosure sale process. Most mortgages or deeds of trust include a "power of sale" (a provision authorizing a foreclosure sale of the property after a default) or an "assent to decree" (a provision declaring an assent to the entry of an order for a foreclosure sale after a default). Under the Maryland Rules, it was not necessary to serve process or hold a hearing prior to a foreclosure sale pursuant to a power of sale or an assent to a decree. Consumer advocates contended that the short timeframes and weak notice provisions in State law seriously limited a homeowner's options to avoid foreclosure by, for example, working out a payment plan with the lender or selling the house. In addition, filing a request for an injunction to stop the sale is expensive, time consuming, and not a realistic option for most homeowners.

*Senate Bill 216 (Ch. 1)/House Bill 365 (Ch. 2)*, emergency legislation that took effect April 4, 2008, make a number of significant changes to the foreclosure process in Maryland for residential real property. "Residential property" is defined under the Acts to mean real property improved by four or fewer single-family dwelling units. Except under specified circumstances, the Acts prohibit the filing of an action to foreclose a mortgage or deed of trust on residential property until the later of 90 days after a default in a condition on which the mortgage or deed of trust states that a sale may be made or 45 days after the notice of intent to foreclose required under the Acts is sent.

. . . .

*Senate Bill 217/House Bill 360* define "mortgage fraud" as any action by a person made with the intent to defraud that involves:
• knowingly making, using, or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that it will be relied upon by a mortgage lender, borrower, or any other party to the lending process;
• receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from the aforementioned actions;
• conspiring to violate either of the preceding provisions; or

7

• filing or causing to be filed in the land records in the county where a residential real property is located any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

Under the Acts, the "mortgage lending process" includes the solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan, as well as the notarizing of any document in connection with a mortgage loan.

Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) *available at* http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

20. The Maryland Court of Appeals recently adopted in October 2010 an emergency rule to deal with the robo-signing issue based upon the recommendation of the Standing Committee on Rules of Practice and Procedure. Writing for the Committee the Honorable Alan M. Wilner explained:

The need for these changes emanates from recent revelations regarding the filing in residential foreclosure actions of affidavits as to which the affiant either did not have sufficient knowledge of the facts stated in the affidavit to validly attest to their accuracy or did not actually read or personally sign the affidavit. Preliminary audits have shown that hundreds of such affidavits have been filed in Maryland circuit courts. Up to this point, courts, with good reason and really of necessity, have relied on the accuracy of affidavits, especially when filed by attorneys, unless there is something on the face of the document to suggest otherwise or the validity of the affidavit is challenged. Evidence that has recently come to light, largely through admissions under oath by the affiants themselves, has shaken the confidence that the courts have traditionally given to those kinds of affidavits.

In the Committee's view, the use of bogus affidavits to support actions to foreclose liens on property, apart from prejudice to the homeowners, constitutes an assault on the integrity of the judicial process itself.

Letter from A. Wilner to the Court of Appeals, Oct. 15, 2010.

8

21. In further response to the foreclosure crisis, Maryland Commissioner of Financial Regulation required for its licensees, including Litton, "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the...servicing...of any mortgage loan, including, but not limited to...(3) The duty when servicing mortgage loans to: (a) Promptly provide borrowers with an accurate accounting of the debt owed when borrowers request an accounting; (b) Make borrowers in default aware of loss mitigation options and services offered by the licensee; (c) Provide trained personnel and telephone facilities sufficient to promptly answer and respond to borrower inquiries regarding their mortgage loans; and (d) Pursue loss mitigation when possible."   Md. Code Regs. 09.03.06.20.

22. Upon information and belief, part or all of the compensation paid by Litton, directly and indirectly, to Jacob Geesing, Howard Bierman, and Carrie Ward (collectively "BGW") to act as its authorized substitute trustees and attorneys is contingent upon how rapid or quickly BGW conducts the foreclosure action.  The faster BGW processes foreclosures for Litton, the higher the compensation and/or the greater number of referrals/future business sent to BGW by Litton.  This payment arrangement leads directly and indirectly to the improper, deceptive, and bogus papers, affidavits, and other documents in BGW's foreclosure actions on behalf of Litton, including this action against the Caseys, which are not in conformance with Maryland law.

## C. BACKGROUND ON THE NAMED PLAINTIFFS

23. At all times relevant to this complaint, the Caseys have lived at the Property.

9

24. In mid-April 2008, the servicing rights of the Caseys' mortgage were transferred from Fremont to Litton.

25. During the summer of 2009, the Caseys could not co-sign or borrow for a Federal Parent Plus loan for their daughter's college education tuition at Roanoke College due to the improper foreclosure action commenced against them by Litton's authorized Substitute Trustees/Attorneys.

26. On or about June 5, 2009, the Caseys sent Litton a letter stating Litton's violations of Maryland Regulation § 09.03.06.13 and requesting a resolution to their situation—i.e. a correct credit of the payments made on the loan.

27. On or about June 17, 2009, the Caseys, through counsel, sent a letter to Noel Connell at Litton. The letter requested an explanation of charges to the Caseys' mortgage account and an answer to the Caseys' proposal contained in the letter dated April 10, 2009.

28. In July 2009, the Caseys sent a letter to Litton demanding a copy of all account records involving the Caseys, an accounting and refund of any sums debited from their escrow or suspense accounts to pay for force placed insurance, a loan modification that reduces the periodic annual interest rate to six point five percent (6.5%) payable, any steps necessary to purge delinquency reports on the Caseys' credit histories with the three (3) major credit reporting agencies or a letter of explanation from Litton which states unequivocally that the delinquency reports arose during and as a result of an investigation of disputed payment defaults and that the Caseys have brought the obligation current as of the date of the letter, a dismissal in the foreclosure proceeding pending in Baltimore City Circuit Court at

no cost to the Caseys, payment of legal fees spent by the Caseys' counsel to investigate and resolve this matter, an acceptance of a payment of $31,519.74, which represents 14 monthly payments on the loan at the effective rate of six point five percent (6.5%) payable, in order to bring the loan current through the end of July 2009, and that these matters be addressed by Litton within 20 days after the date of this letter.

29. On or about July 6, 2009, the Caseys, through counsel, sent a letter to Noel Connell at Litton. The letter requested an explanation of charges to the Caseys' mortgage account and reiterated the Caseys' proposal contained in the letter dated April 10, 2009.

30. On or about July 28, 2009, Litton finally attempted to issue to the Caseys a full accounting of the Caseys' loan payment history. The letter also stated falsely that the Caseys' bank records did not establish payment of their mortgage during the disputed months and that Litton will not make adjustments to the credit reporting agencies.

31. In August 2009, Litton reinstituted the improper foreclosure proceedings against the Caseys and the Property through BGW.

32. Not known or apparent to the Caseys until October 2010 when public revelations of BGW became known, Litton had actually filed, through BGW, a bogus Order to Docket in the Circuit Court of Baltimore City, Maryland. *See Exhibit 1.*

33. Through its authorized attorneys BGW, Litton authorized the foreclosure case as a consent decree foreclosure action against the Caseys in this Court. A consent decree foreclosure under the Maryland Rules permits a bona fide secured party to

commence a foreclosure action without having to proceed through a longer judicial process. Essentially, the state court entrusts to certain Members of the Bar acting as officers of the Court and substitute trustees for secured parties, the responsibility to comply with certain mandatory prerequisites on behalf of the Court—thereby assuming substantial responsibilities from the state court clerks and judges. In this case, BGW did not act within that scope of authority.

34. As part of the Order to Docket papers filed with the Court in the foreclosure action authorized by Litton against the Caseys, the Affidavit of Deed of Trust Debt, Certification Regarding Debt Instrument, Certification of Deed of Appointment of Substitute Trustee, and Affidavit of Non-Military Service in the Order to Docket were purportedly signed with the name "Jacob Geesing" (as an authorized agent of Litton) but in fact were not signed by him. This belief is based on signature purporting to be Jacob Geesing's actual signature. See Exhibit 2; June 28, 2002 Deed of Trust executed by Geesing on a Maryland property located at 6400 East Halbert Road, Bethesda, Maryland.

35. Included among the bogus Order to Docket filed by Litton's representatives against the Caseys were also an Affidavit of Deed of Trust Debt, Certification Regarding Debt Instrument, and Affidavit of Non-Military Service in the Order to Docket were allegedly notarized by Rodnita Moulton ("Moulton").

36. On or about August 11, 2009, the Caseys received notice of a scheduled sale date of August 28, 2009.

37. On or about August 13, 2009, the Caseys through counsel sent a letter to Jacob Geesing ("Geesing") requesting the dismissal of the foreclosure action and

notifying Geesing of the Caseys intent to file a Motion to Stay and Dismiss pursuant to Maryland Rule 14-211.

38. On or about August 17, 2009, the Caseys sent a letter to Matthew Cohen notifying him of the Caseys intent to file a Motion to Stay and Dismiss pursuant to Maryland Rule 14-211.

39. On or about August 18, 2009, the Caseys sent a letter via email to Matthew Cohen notifying him of the Caseys intent to file a Motion to Stay and Dismiss pursuant to Maryland Rule 14-211. On the same day, Litton requested that the Caseys not file their Emergency Rule 14-211 Motion to Stay and Dismiss the Action and asked them to provide the cancelled checks or other proof of receipt of the disputed payments and proof of any sums in escrow. In return, Litton promised to postpone the sale for 30 days and waive the right to argue untimeliness of the motion.

40. On or about August 19, 2009, the Caseys filed a Motion to Stay the Foreclosure Proceedings and Dismiss the Action.

41. On or about August 24, 2009, Litton provided another incomplete payment history of the Caseys' loan via email.

42. On or about August 27, 2009, a judicial order was issued providing a stay of the sale of the property, ordering mediation, and scheduling a hearing for the Motion to Stay and Dismiss the Action.

43. On or about September 9, 2009, the Caseys received discovery requests from Litton. In addition, Litton requested to appear at mediation via telephone.

44. On or about September 16, 2009, the Caseys received requests from Litton that

they send copies of their most recent pay stubs, bank statements, tax returns, and documentation of disputed payments. These documents were timely sent to Litton by the Caseys.

45. In October 2009, the Caseys received requests from Litton for additional information at least three (3) times and each time they submitted the requested documents via email.

46. During November and December of 2009, the Caseys received requests from Litton for additional information at least five (5) times including requesting information about a company in which the Caseys had no ownership interest.

47. On or about January 31, 2010, the Caseys received a denial of a loan modification from Litton via email.

48. However, just four days later on or about February 3, 2010, the Caseys received a notification that Litton is willing to reconsider a loan modification if the Caseys provide two (2) recent pay stubs which the Caseys could not provide in as much as Brian Casey was/is self-employed and Sheryl Casey was/is unemployed.

49. On or about February 5, 2010, the Caseys requested that Litton issue a statement of credit denial to the Caseys. Litton has never issued a statement of credit denial.

50. On or about February 12, 2010, the Caseys received a request from Litton for additional information. The Caseys sent Litton Brian Casey's profit and loss statement via email.

51. On or about March 26, 2010, the Caseys requested an update on the status of the loan modification from Litton.

52. On or about May 21, 2010, the Caseys sent a letter to Larry Litton outlining the

dispute, offering to make payments for the time period of June 2008 to June 2010 based on the Regal loan commitment, and requesting a loan modification, waiver of all late fees and legal charges, a letter to all three major credit reporting agencies correcting the damage to the Caseys' credit, payment of the Caseys' legal fees, and a full and accurate accounting of the Caseys' loan account since inception noting all adjustments including the insurance escrow adjustments.

53. On or about June 10, 2010, Litton, through counsel, confirmed that it was reviewing the loan file.

54. On or about June 16, 2010, Sarala Chhetri, Financial Examiner at the State of Maryland Department of Labor, Licensing, and Regulation confirmed receipt of the Caseys' complaint regarding Litton.

55. On or about June 18, 2010, Litton issued a Notice of Intent to Foreclose on the Property.

56. On or about August 9, 2010, the Caseys, through counsel, sent a letter to Toby Gallegos and Donna Marie Jendritza at Litton seeking to resolve the dispute. No response was ever provided by Litton.

57. On or about November 2, 2010, the Caseys received a letter from Titanium Solutions ("Titanium") on behalf of Litton stating that there are possible options to preserve the home. In addition, the letter states that a Titanium representative will be calling to assist in completing a phone call to Litton and/or set up an appointment to discuss documents still needed by Litton to complete the loan modification application.

58. On or about August 5, 2010, the Maryland Office of the Secretary of State

decommissioned Moulton's notary commission because it was disclosed that she had participated in the false notarizations at BGW.

59. On or about October 22, 2010, Geesing filed a Substitute Trustees' Verified Response in Opposition to Defendants' Emergency Request for Consideration of Defendants' Renewal of Verified Motion to Dismiss Plaintiffs' Foreclosure Action or Alternatively for a Stay Pending Further Proceedings Under New Rule 14-207.1 in an unrelated case *Geesing v. Willson* (Circuit Court for Howard County, Case No. 13-C-10-082594). *See Exhibit 3.*

60. Neither Geesing's signature on the deed of trust (*Exhibit 2*) nor the signature on the Substitute Trustees' Verified Response in Opposition to Defendants' Emergency Request for Consideration of Defendants' Renewal of Verified Motion to Dismiss Plaintiffs' Foreclosure Action or Alternatively for a Stay Pending Further Proceedings Under New Rule 14-207.1 (*Exhibit 3*) match the signature on the Order to Docket filed against the Caseys and the Property (*Exhibit 1*).

61. Upon information and belief, the Order to Docket is bogus because someone other than Geesing signed for him swearing the truth of certain facts and Moulton fraudulently notarized that Geesing "personally appeared" before her and signed the Affidavit of Deed of Trust Debt, Certification Regarding Debt Instrument, and Affidavit of Non-Military Service in the Order to Docket. This belief is based upon published reports concerning attorney robo-signing practices in Maryland.

62. The Caseys have been damaged by Litton's direct and indirect actions, including those by its authorized substitute trustees and attorneys BGW, described herein

16

through the improper commencement and prosecution of the foreclosure action against them that has damaged their credit, cost them legal fees and expenses, and emotional damages due to stress and other physical manifestations. Upon information and belief, Litton has also charged the Caseys' account with fees and charges related to the illegal and bogus foreclosure filed against them.

## FACTS COMMON TO THE CLASS

63. This class action is brought by the Caseys on behalf of themselves and a Class of all Maryland residents who were (i) an owner-occupant of residential property in the State of Maryland; (ii) subject to a foreclosure action docketed by Howard Bierman, Jacob Geesing, or Carrie Ward on behalf of Litton Loan Servicing; and (iii) during the foreclosure proceeding, Howard Bierman, Carrie Ward, or Jacob Geesing supported the foreclosure action through the filing of one or more bogus documents. This shall be referred to as the "Class".

64. Named Counter Plaintiffs sue on their own behalf and on behalf of the people who comprise the Class under MD. RULE 2-231.

65. Named Counter Plaintiffs do not know the exact size or identities of the proposed Classes, since such information is in the exclusive control of Defendant. Upon information and belief the Class encompasses more than 100 individuals based upon public records filed in the circuit courts of the State of Maryland and reported by Litton and BGW to the Office of the Commissioner of Financial Regulation.

66. All members of the Classs have been subject to and affected by the same conduct. The claims are based on the same actions. There are questions of law and fact

that are common to the Class, and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

a.  whether Litton's foreclosure actions through improper papers and affidavits by its authorized substitute trustees/attorneys, BGW, have any legal effect;

b.  whether Defendant's conduct through its authorized substitute trustees/attorneys, BGW, amounts to "unclean hands";

c.  whether Defendant's conduct violates the Maryland Consumer Protection Act ("MCPA"), MD CODE ANN., COM. LAW, § 13-101, *ET SEQ.*;

d.  whether Defendant's conduct violates the MARYLAND CONSUMER DEBT COLLECTION ACT ("MDCDCA"), MD CODE ANN., COM. LAW, § 14-201, *ET SEQ.*;

e.  whether Defendant's conduct violates the MARYLAND MORTGAGE FRAUD PREVENTION ACT ("MMFPA"), MD CODE ANN., REAL PROP., § 7-401, *ET SEQ.*;

f.  whether the Defendant should be enjoined from continuing to pursue foreclosure actions, directly or indirectly, in Maryland based upon bogus affidavits and papers;

g.  whether the Defendant should be ordered to refund to Class all legal fees and expenses assessed as part of the foreclosure action against them;

h.  the attorney fees, litigation costs, and court costs allowed and

18

claimed in this civil action;

i.        whether BGW's actions were authorized by Maryland Courts;

j.        the declaratory relief sought in this civil action; and

k.        the injunctive relief sought in this civil action.

67. The claims of the Named Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the class in that both the Named Plaintiffs and the other members of the class were subject to the same conduct.

68. The Caseys' claims are typical of the claims of members of the Class.

69. The Named Plaintiffs are similarly situated with and have suffered similar damages (identified in ¶ 62) as the other members of the Class.

70. The Named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions related to Maryland's foreclosure laws and procedures.

71. A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

72. This putative class action meets all of the requirements of Rule 2-231.

73. The Defendant has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

74. It would not be economically feasible for each of the individual Class members to maintain similar claims since many of them have already suffered financial setbacks.

75. The damages of each individual Class member can be calculated using the same common formulas and are similar in nature as those as the Caseys identified in ¶ 62 above.

76. Failure to join the claims of each individual claimant into class claims would lead to duplicate claims/litigation involving the same issues and facts, excessive costs and fees, burdens and potentially inconsistent outcomes.

77. The common issues set forth above predominate and asserting the claims on a class basis is superior to the alternative.

## COUNT ONE – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*
### (INDIVIDUAL AND CLASS CLAIMS)

78. The mortgage loan transactions and foreclosure practices as set forth herein of the Defendant against the Named Plaintiffs and Class members are governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

79. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  The prosecution of a foreclosure action involves both the extension of credit and the collection of debts.

80. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or

misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

81. By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act. Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

82. The Defendant's conduct, as set forth above, had the capacity, tendency or effect of deceiving the Caseys and other Class members, who in fact were deceived or misled, causing injury and loss through:

> a.   the unfair or deceptive prosecution, based upon bogus papers and affidavits, of a foreclosure action by Defendant through its authorized substitute trustees/attorneys BGW; and

> b.   the Defendant's payment structure with BGW "infected" and "exasperated" the use of bogus papers and foreclosure practices of BGW since unless BGW met Litton's goals, it could not receive future work. *Hoffman v. Stamper*, 385 Md. 1, 32, 867 A.2d 276, 294 (2005).

WHEREFORE, the Caseys request the following on their behalf and on behalf of Class:

A. They be awarded as part of this claim a sum of no less than $5,000,000 which represents their compensatory damages as a result of the Defendant's, direct and indirect, unfair or deceptive practices;

B. The Court certify the Class and appoint the Plaintiffs as class representatives and their counsel as Class Counsel;

C. Class be awarded as part of all their claims a sum of no less than $1,000,000 subject to amendment, which represents the compensatory damages for the Class;

D. They be awarded their reasonable attorney's fees and costs; and

E. That their claim should include such other and further relief as the Court deems just and proper.

## COUNT TWO: VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT, MD. ANN. CODE, COMM. LAW ART. § 14-202
### (INDIVIDUAL AND CLASS CLAIMS)

83. The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 82 of this Complaint with the same effect as if herein fully set forth.

84. By authorizing the filing debt collection foreclosure proceedings and/or conducting foreclosure actions based upon bogus or insufficient papers and affidavits through its authorized substitute trustees/attorneys BGW, the Defendant has asserted a claim with knowledge that the right does not exist in violation of Md. Ann. Code, Comm. Law Art. § 14-202 (8).

85. The Caseys and Class seek a remedy under the Maryland Consumer Debt Collection Act ("MDCA") for damages, attorneys' fees, and any other relief

available against the Defendant.

WHEREFORE, the Caseys request the following on their behalf and on behalf of the class:

    A. They be awarded as part of this claim a sum of no less than $5,000,000 which represents their compensatory damages as a result of the Defendant's unfair or deceptive practices;

    B. The Court certify the Class and appoint the Named Plaintiffs as class representatives and their counsel as Class Counsel;

    C. They be awarded their reasonable attorney's fees and costs;

    D. That their claim should include such other and further relief as the Court deems just and proper.

## COUNT THREE: MARYLAND MORTGAGE FRAUD PROTECTION ACT, MD. ANN. CODE, REAL PROP. § 7-401 MD. REAL PROP., *et seq.*

### (INDIVIDUAL AND CLASS CLAIMS)

86. The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 85 of these Counter Claims with the same effect as if herein fully set forth.

87. The Maryland Mortgage Fraud Protection Act, Md. Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendant and the Named Plaintiffs and Class members with transactions that accrued since April 4, 2008.

88. MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs and Class Members are record

owners of the residential properties in question and therefore are Homeowners.

89. MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending

process…includes [t]he…servicing…of a mortgage loan."

90. MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides:

"Mortgage loan" means any loan or other extension of credit that is: (i) Secured,

in whole or in part, by any interest in residential real property in Maryland; and

(ii) If for personal, household or family purposes, in any amount."

91. The MMFPA works to protect the interests of all parties to mortgage issues in

Maryland from misstatements, misrepresentations and omissions; in this instance

the MMFPA works to protect borrowers like the Caseys from mortgage

companies like the Defendant and ensure a level, fair playing field between all

borrowers and professionals.

92. The Plaintiffs and members of Class I were or are homeowners in the Mortgage

Lending Process as defined by the MMFPA since the actions in dispute in this

lawsuit involve the servicing of their residential mortgage loans as it relates to the

foreclosure action which is an attempt to collect a certain sum on the mortgage

transaction.

93. MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to

defraud that involves:

1. Knowingly making any deliberate misstatement,
   misrepresentation or omission during the mortgage lending
   process with the intent that the misstatement,
   misrepresentation or omission be relied on by a mortgage
   lender, borrower or any other party to the mortgage lending
   process;

    2.     Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

    3.     Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

    4.     Conspiring to violate any provisions of item of (1), (2) or (3) of this section...

94. The Defendant has committed Mortgage Fraud by:

    a.  Knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including the state court foreclosure actions it has commenced and carried out, with the intent that the misstatements, misrepresentations and omission be relied on by the Plaintiff and Class Members (and the general public);

    b.  Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, including the state court foreclosure actions it has commenced and carried out, with the intent that the misstatements, misrepresentations, and omissions be relied on by the Plaintiff and Class Members.

95. Plaintiff and the Class I Members have been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as stated herein. As a result Plaintiff and Class Members have been damaged by Litton's commencement of foreclosure actions against them by

providing the Plaintiff and Class Members with a condition precedent before the commencement of that lawsuit—i.e. a valid affidavit.

96. MD ANN. CODE., REAL PROP. CODE. § 7-401 (g) provides:

Pattern of mortgage fraud means two or more incidents of mortgage fraud that:

- Involve two or more residential real properties; and
- Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

97. Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by Litton against the Plaintiff and Class I Members as described herein.

WHEREFORE, the Caseys request the following on their behalf and the Class:

A. They be awarded as part of their claims the sum of no less than $1,000,000 which represents their compensatory damages as a result of the Defendant's illegal practices and misrepresentations;

B. The Court certify the Class and appoint the Plaintiffs as class representatives and their counsel as Class Counsel;

C. They be awarded willful and knowing damages up to three times the total compensatory damages awarded.;

D.  They be awarded as part of the claim their reasonable attorney's fees and costs; and

E.  That their claim should include such other and further relief as the Court deems just and proper.

## COUNT FIVE: DECLARATORY AND INJUNCTIVE RELIEF
## (INDIVIDUAL AND CLASS CLAIMS)

98.  The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 97 of this Complaint with the same effect as if herein fully set forth.

99.  Plaintiffs seek a declaration of their rights, as well as the rights of the Class, with respect to the state court foreclosure actions the Defendant has commenced based upon bogus or insufficient papers and affidavits through its authorized substitute trustees/attorneys BGW.

100.   An actual controversy exists as to whether Defendant's foreclosure efforts violate the MCPA, MDCA, MMFPC, and common law of Maryland.

101.   Declaratory relief is appropriate pursuant to Rule 2-231 and MD ANN. CODE., CTS. & JUD. PROC., § 3-403.

102.   Declaratory relief is also appropriate pursuant to Rule 2-231(d) since Plaintiffs seek to maintain this claim on behalf of the Class for the purpose of determining and answering the issue of whether Litton has complied with Md. Code Regs. 09.03.06.20 in regards to its foreclosure practices through BGW.

103.   Plaintiffs are entitled to an injunction since the actions of Litton are improper and illegal.

104.   The public interest is served by enjoining the Defendant from continuing

to violate the Maryland procedures, regulations, and laws.

105.     The public interest will be further served by mandating that Defendant is responsible for the fast-track, illegal foreclosure practices of Defendants' authorized substitute trustees/attorneys based upon bogus or insufficient papers and affidavits.

106.     The foreclosures relate to the homes of the Plaintiffs and other Class members and will cause irreparable harm if the Defendant is not enjoined.

107.     The burden imposed on the Defendant by requiring it to comply with Maryland foreclosure laws and related regulations concerning the servicing of mortgage loans is substantially outweighed by the harm suffered by Plaintiffs and Class members by allowing the Defendant to wrongfully foreclose and ignore Md. Code Regs. 09.03.06.20.

WHEREFORE, the Caseys request the following on their behalf and also on behalf of members of Class:

A. Certify this case as a class action pursuant to *Md. Rule 2-231*, with the Named Plaintiffs as class representatives and their attorneys acting as counsel on behalf of the Class described herein;

B. Order appropriate injunctive relief to rectify past violations of law and to prevent further violations of law, including a temporary restraining order, preliminary and permanent injunction on any foreclosure actions currently pending or to be instituted against the Plaintiffs or any members of the classes; and

C. Order other appropriate declaratory relief.

28

**COUNT SIX – VIOLATION OF MARYLAND'S CONSUMER PROTECTION**

**ACT**

**(INDIVIDUAL CLAIMS)**

108.   The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 107 of this Complaint with the same effect as if herein fully set forth.

109.   The mortgage loan transaction as set forth herein was governed by the Consumer Protection Act, MD. CODE ANN. COM. LAW § 13-101 *et. seq.*

110.   Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  It is both unfair and deceptive for a Maryland licensed mortgage servicer to not meaningfully comply with Md. Code Regs. 09.03.06.20 concerning Plaintiffs' multiple requests to modify their loan and receive a proper accounting of the loan.

111.   The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

112.   By engaging in the acts and omissions and misrepresentations set forth above including those identified in 3,24-30,41,44-57, & 62, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of

29

the Maryland Consumer Protection Act.  Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

113.     The Defendant's conduct, as set forth above, had the capacity, tendency or effect of deceiving the Caseys causing injury and loss through:

    a.  the failed opportunity to pay-off their loan for a true and accurate amount from Litton and obtain a lower, market interest rate from Regal Bank;

    b.  damage to their credit by Litton's utter failure to ever consider in good faith providing the Caseys with a modification and/or resolution of the mortgage situation and just simply ignoring the Caseys many efforts to resolve the issues identified by the Caseys;

    c.  the failure to comply with Md. Code Regs. 09.03.06.20 and meaningfully consider the Caseys for any modification of their loan.  Through this act Litton wrongfully sabotaged and shortchanged the Plaintiffs in violation of its responsibilities intended for their benefit; and

    d.  subjecting the Caseys to premature foreclosure proceedings which were improperly commenced (and/or carried out by the Defendant or its agents on its behalf) and are now reported on their credit reports before Defendant complied with Md. Code Regs. 09.03.06.20.

WHEREFORE, the Caseys request the following on their behalf:

A.     They be awarded as part of this claim a sum of no less than $200,000 which represents their compensatory damages as a result of the Defendant's unfair or deceptive practices;

B.     They be awarded their reasonable attorney's fees and costs; and

C.    That their claim should include such other and further relief as the Court deems just and proper.

## COUNT SEVEN: VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT

### (INDIVIDUAL CLAIMS)

114.    The Plaintiffs adopts by reference the allegations contained in paragraphs 1 through 113 of this Complaint with the same effect as if herein fully set forth.

115.    By engaging in the acts and omissions and misrepresentations set forth above including those identified in 3,24-30,41,44-57, 62 & 113, as well as failing to meaningfully comply with Md. Code Regs. 09.03.06.20, before commencing and then continuing to claim the right of a foreclosure action against the Caseys and the Property, the Defendant has asserted a claim with knowledge that the right does not exist in violation of Md. Ann. Code, Comm. Law Art. § 14-202 (8).

116.    The Caseys seek a remedy under the Maryland Consumer Debt Collection Act ("MDCA") for damages, attorneys' fees and any other relief available against the Defendant.

WHEREFORE, the Caseys request the following on their behalf and on behalf of the class:

A. They be awarded as part of this claim a sum of no less than $200,000 which represents their compensatory damages as a result of the Defendant's unfair or deceptive practices;

B. They be awarded their reasonable attorney's fees and costs;

C. That their claim should include such other and further relief as the Court deems just and proper.

## COUNT EIGHT:  MARYLAND MORTGAGE FRAUD PROTECTION ACT

### (INDIVIDUAL CLAIMS)

117.     The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 116 of this Complaint with the same effect as if herein fully set forth.

118.     The Maryland Mortgage Fraud Protection Act, § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendant and the Plaintiffs.

119.     MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs are record owners of the residential properties in question and therefore are Homeowners.

120.     MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process...includes [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing and funding of a mortgage loan."

121.     MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

122.     The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like the Caseys from mortgage companies like the Defendant and ensure a level, fair playing field between all

borrowers and professionals.

123.    The Plaintiffs were or are homeowners in the Mortgage Lending Process

as defined by the MMFPA since the actions in dispute in this lawsuit involve the

servicing of their residential mortgage loans.

124.    MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to
defraud that involves:

1.     Knowingly making any deliberate misstatement,
misrepresentation or omission during the mortgage
lending process with the intent that the misstatement,
misrepresentation or omission be relied on by a mortgage
lender, borrower or any other party to the mortgage
lending process;

2.     Knowingly using or facilitating the use of any
deliberate misstatement, misrepresentation, or omission
during the mortgage lending process with the intent that
the misstatement, misrepresentation, or omission be
relied on by a mortgage lender, borrower, or any other
party to the mortgage lending process.

3.     Receiving any proceeds or any other funds in
connection with a mortgage closing that the person
knows resulted from a violation of item (1) or (2) of this
section;

4.     Conspiring to violate any provisions of item of (1),
(2) or (3) of this section...

125.    The Defendant has committed Mortgage Fraud by:

a. Knowingly making, as described herein, deliberate misstatements,

misrepresentations and omissions during the mortgage lending process,

including the state court foreclosure actions it has commenced and carried

out, with the intent that the misstatements, misrepresentations and

omission be relied on by the Plaintiffs;

33

       b.    Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, including modification of home mortgages and the state court foreclosure actions it has commenced and carried out, with the intent that the misstatements, misrepresentations, and omissions be relied on by the Plaintiffs.

126.    Plaintiffs have been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as stated herein including those identified in  identified in 3,24-30,41,44-57, 62 & 113, as well as  failing to meaningfully comply with Md. Code Regs. 09.03.06.20

127.    MD ANN. CODE., REAL PROP. CODE. § 7-401 (g) provides:

Pattern of mortgage fraud means two or more incidents of mortgage fraud that:

- Involve two or more residential real properties; and
- Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

128.    Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by Litton against the Plaintiffs as described herein this claim.

WHEREFORE, the Caseys request the following on their behalf:

A.      They be awarded as part of their claims the sum of at least $200,000, subject to amendment, which represents their compensatory damages as a result of the Defendant's illegal practices and misrepresentations;

B.      They be awarded treble damages for the Defendants knowing and willful acts against the Plaintiffs;

C.      They be awarded as part of the claim their reasonable attorney's fees and costs; and

D.      That their claim should include such other and further relief as the Court deems just and proper.

## COUNT NINE: CONTRACT
## (INDIVIDUAL CLAIMS)

129.      The Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 128 of this Complaint with the same effect as if herein fully set forth.

130.      Defendant is obligated by contract, statutory, and common law to act in good faith and to deal fairly with each borrower.

131.      The contractual duty of good faith and fair dealing in Maryland "'prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract.'... In short, while the implied duty of good faith and fair dealing recognized in Maryland requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise. An implied duty is simply a

recognition of conditions inherent in expressed promises." *Blondell v. Littlepage*,

413 Md. 96, 114, 991 A.2d 80, 90 – 91 (Md.,2010)(internal citations omitted).

132.      Defendant routinely and regularly breached its duty of care owed to the

Caseys by:

      a.      failing to perform loan servicing functions consistent

with its responsibilities to Plaintiffs;

      b.      failing to properly supervise its agents and employees including,

without limitation, its loss mitigation and collection personnel and its

foreclosure attorneys;

      c.      failing to provide accurate payoff statements;

      d.      routinely demanding information already in its files;

      e.      making inaccurate calculations and determinations of Plaintiffs'

eligibility for a modification;

      f.      failing to follow through on written, oral, and implied promises;

      g.      failing to follow through on contractual obligations; and/or

      h.      failing to give the Caseys a permanent modification and

other foreclosure alternatives.

WHEREFORE, the Caseys request the following on their behalf:

A. They be awarded as part of their claims the sum of $200,000 which

      represents  their compensatory damages as a result of the Defendant's

      illegal practices and misrepresentations;

B. They be awarded as part of the claim their reasonable attorney's fees

      and costs; and

C. That their claim should include such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Phillip Robinson
Anthony DePastina
Civil Justice Inc.
520 W. Fayette Street, Suite 410
Baltimore, MD 21201
Telephone (410) 706-0174
Facsimile (410) 706-3196

## DEMAND FOR JURY TRIAL

Plaintiffs prays for a trial by jury on all claims and factual disputes described herein.

Respectfully Submitted,

Phillip Robinson