IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRIAN J. CASEY and<br>SHERYL A. CASEY, *et al.* | * | |
| | * | |
| Plaintiffs, | | |
| | * | Civil Action No.: RDB-11-0787 |
| v. | | |
| | * | |
| LITTON LOAN SERVICING LP, | | |
| | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

This putative class action was originally filed by Plaintiffs Brian and Sheryl Casey ("Plaintiffs") in the Circuit Court for Baltimore City on February 17, 2011, asserting claims arising out a foreclosure action that was ultimately dismissed by the foreclosure trustee. More specifically, Plaintiffs' claims stem from the alleged "robo-signing" of foreclosure documents by a non-party law firm hired by Defendant Litton Loan Servicing LP ("Defendant" or "Litton") to prosecute the foreclosure action. After removing the action to this Court,[1] Litton filed a motion to dismiss on April 15, 2011. Plaintiffs did not oppose the motion to dismiss, but instead filed an Amended Complaint on May 2, 2011.[2] In the Amended Complaint, Plaintiffs allege violations of Maryland's Consumer Protection Act, Maryland's Consumer Debt Collection Act, Maryland's Mortgage Fraud Protection Act, and the federal Equal Credit Opportunity Act. Plaintiffs request damages and injunctive relief.

---

[1] Removal was based on diversity of citizenship under 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). *See* Notice of Removal, ECF No. 1.

[2] Litton did not oppose the Plaintiffs' filing of the Amended Complaint.

Pending before this Court is Plaintiffs' motion for partial summary judgment, Defendant's motion to dismiss, and Plaintiffs' motion to file a supplement to their opposition to the Defendant's motion to dismiss.  This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  This Court concludes that Plaintiffs lack standing to bring this action insofar as there exists no case or controversy, and any alleged injury suffered by Plaintiffs is not fairly traceable to any action on the part of Defendant Litton.  Additionally, Plaintiffs fail to state a claim on which relief may be granted.  Accordingly, for the reasons that follow, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED; Plaintiffs' Motion for Partial Summary Judgment (ECF No. 22) is DENIED as MOOT; and Plaintiffs' Motion to Supplement (ECF No. 37) is DENIED.

**BACKGROUND**

The Caseys are the owners of a residence located at 407 Cedarcroft Road, Baltimore, Maryland (the "Property").  Am. Compl. ¶ 8.  The mortgage loan (the "Loan") at issue is secured by a lien on the Property, and is currently serviced by Defendant Litton.  *Id.* at ¶¶ 9, 23.  While the Amended Complaint does not provide specific dates, it is clear that between April and June of 2008, the Caseys became delinquent on the Loan.  *See id.* ¶¶ 27, 51.  For example, the Plaintiffs state that in July 2009 they sent a letter to Litton "demanding . . . an acceptance of a payment of $31,519.74, which represents 14 monthly payments on the loan . . . in order to bring the loan current through the end of July 2009[.]"  *Id.* ¶ 27.  Almost a year

later, the Caseys sent a similar letter to Litton in which they offered "to make payments for the time period of June 2008 to June 2010 . . . ." *Id.* ¶ 51.

During the pendency of the Loan's delinquency, Litton authorized substitute trustees Howard Bierman, Jacob Geesing, and Carrie Ward (collectively, "BGW") to institute a foreclosure proceeding against the Caseys in the Circuit Court for Baltimore City, Maryland. *See id.* ¶ 30. Throughout the foreclosure proceedings, the Caseys disputed charges to the Loan, and made numerous requests for a modification of the Loan. *See id.* ¶¶ 26-28, 36-40. On August 19, 2009, the Caseys filed a motion to stay the foreclosure proceedings and dismiss the state court action. *Id.* ¶ 39. While it does not appear in the First Amended Complaint, Litton states, and the Caseys do not contest, that the foreclosure proceedings were dismissed on February 2, 2011. *See* Def.'s Mem. at 3, ECF No. 23-2. At present, there is no foreclosure action, active, pending, or otherwise, against the Caseys.

Notwithstanding the fact that the foreclosure proceedings were dismissed, the crux of the Caseys argument involves their contention that the substitute trustees BGW filed "bogus" documents in connection with the foreclosure proceedings. Am. Compl. ¶ 31. Specifically, the Plaintiffs argue that "the Affidavit of Deed of Trust Debt, Certification Regarding Debt Instrument, Certification of Deed of Appointment of Substitute Trustee, and Affidavit of Non-Military Service . . . were purportedly signed with the name 'Jacob Geesing' . . . but in fact were not signed by him." *Id.* ¶ 33, 59-60. In addition, the Caseys contend that those documents were "fraudulently notarized" by Rodnita Moulton, a BGW employee. *Id.* ¶¶ 34, 60. The Plaintiffs argue that this alleged "robo-signing" on the part of non-party BGW is "symptomatic of the current economic conditions plaguing our nation,"

and was authorized and condoned by Defendant Litton in order to "expedite the processing of foreclosure cases and maximize profit." Pls.' Opp'n at 3-4, ECF No. 35. In other words, BGW's alleged robo-signing of foreclosure documents is at the heart of the Plaintiffs' individual as well as class-wide claims. *See* Am. Compl. ("The class claims asserted . . . are brought by the Caseys on behalf of themselves and a Class of all Maryland residents who [own residential property in Maryland that is] subject to a foreclosure action docketed by [BGW] . . . and . . . [BGW] supported the foreclosure action through the filing of one or more bogus documents.").

The Caseys filed this action against Litton on February 17, 2011 in the Circuit Court for Baltimore City, Maryland. Litton removed the case to this Court on March 25, 2011, based on diversity jurisdiction. Plaintiffs filed an eight-count Amended Class Action Complaint on May 2, 2011, and Litton filed the pending motion to dismiss on June 6, 2011. In Counts One and Five of the Amended Complaint, Plaintiffs, individually and on behalf of the class, allege that Litton violated the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-101, *et seq.* In Counts Two and Six, Plaintiffs, individually and on behalf of the class, allege that Litton violated the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., COM. LAW § 14-201, *et seq.* In Counts Three and Seven, Plaintiffs, individually and on behalf of the class, allege that Litton violated the Maryland Mortgage Fraud Protection Act ("MMFPA"), MD. CODE ANN., REAL PROP. § 7-401, *et seq.* In Count Eight, Plaintiffs, in their individual capacity, allege that Litton violated the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* In Count Four, Plaintiffs seek declaratory and injunctive relief individually and on behalf of the class.

**STANDARD OF REVIEW**

**I.  Motion to Dismiss Pursuant to Rule 12(b)(1)**

Litton first moves to dismiss Plaintiff's case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  A motion to dismiss for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A plaintiff carries the burden of establishing subject matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  Under Rule 12(b)(1), if a party lacks standing the court automatically lacks subject matter jurisdiction.  *See Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009).  To meet the standing requirement, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 750 (1984); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000).

**II.  Motion to Dismiss Pursuant to Rule 12(b)(6)**

Litton also seeks to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet v. Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.

Ct. at 1949. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950.

## ANALYSIS

### I. Rule 12(b)(1)—Standing

Litton argues that the Plaintiffs lack standing to bring this action because they fail to allege a specific harm caused by Litton, and that if Plaintiffs suffered any harm at all, that harm is not fairly traceable to any actions on the part of Litton.

Article III of the United States Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). "The Supreme Court has made clear that 'standing is an essential and unchanging part' of that case-or-controversy requirement, one that 'state[s] fundamental limits on federal judicial power in our system of government.'" *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Allen*, 468 U.S. at 750; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The "[s]tanding doctrine functions to ensure . . . that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). Moreover, "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

To establish their standing, the Plaintiffs bear the burden of demonstrating that:

7

> (1) [they have] suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc.*, 528 U.S. at 180-81 (citing *Lujan*, 504 U.S. at 560-61). In undertaking this inquiry, this Court is mindful that "the fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). As this Court has previously noted, "the frustration of a party's generalized interest in the proper application of the law is not by itself an injury in fact for purposes of standing." *Doe v. Obama*, 670 F. Supp. 2d 435, 439 (D. Md. 2009), *aff'd* 631 F.3d 157 (4th Cir. 2011) (quoting *Delta Commercial Fisheries Ass'n v. Gulf of Me. Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004)).

In this case, Plaintiffs have not met their burden in establishing their standing to bring a cause of action.[3] As previously mentioned, the state court foreclosure action that is at the heart of this case was dismissed by the foreclosure trustee, BGW, *before* the Plaintiffs instituted this action. Moreover, the alleged "robo-signing" of documents that underlies each of the Plaintiffs' complaints, if it occurred at all, was perpetrated by the substitute trustees and not the Defendant Litton Loan Servicing. While the Plaintiffs' have not made a plausible showing that they suffered any actual concrete injury at the hands of the Defendant, it is clear that to the extent they did suffer some injury, that injury was a result of

---

[3] This Court makes this determination with respect to all counts in the Plaintiffs First Amended Complaint with the exception of Count Eight which alleges violations of the Equal Credit Opportunity Act. That Count will be dismissed for the reasons discussed *infra* at Part II.

the Plaintiffs' own failure to keep current on their mortgage, and not on the allegedly "bogus" documents filed by BGW in the course of the dismissed foreclosure proceeding.

For example, the Plaintiffs' argue that they suffered damages in the form of harm to their credit score. However, in their Amended Complaint, the Plaintiffs essentially acknowledge that their credit score was damaged as a result of defaulting on their mortgage. *See* Am. Compl. ¶ 27 (acknowledging delinquency of fourteen months on the mortgage loan). Moreover, the Plaintiffs' have completely failed to provide any facts indicating that harm to their credit score is traceable to actions of the Defendant Litton. By way of contrast, in a similar case, *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 369 (D. Md. 2010), this Court denied a defendant's motion to dismiss where the plaintiffs alleged damages to their credit score. However, in *Hauk*, the plaintiffs argued that their credit was damaged as a proximate result of an illegal foreclosure action filed by the defendant. The defendant in that case was a debt collector, and was the actual party who filed a debt collection lawsuit against the plaintiffs. *Id.* at 360. In the present case, the foreclosure action was instituted *after* the Plaintiffs defaulted on their mortgage, and was instituted by non-party BGW. In short, this case is clearly distinguishable from the *Hauk* case previously addressed by this Court.

Quite simply, the Plaintiffs' Amended Complaint fails to allege any concrete and particularized "injury in fact" that is fairly traceable to actions attributable to Litton. *Lujan*, 504 U.S. at 560. Plaintiffs are not the first federal court claimants to make allegations relating to alleged "robo-signing," and these cases have taken a variety of forms and have garnered different degrees of success. However, as noted by the Supreme Court, "the 'case

9

or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). In this case, the Plaintiffs have failed in their obligation to provide facts sufficient to indicate any causal link between actions of the Defendant Litton and any damages they may have received as a result of BGW's filing of foreclosure document that may have contained improper signatures and notarizations. It is well established that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Simon*, 426 U.S. at 40 n.20) (internal quotation marks omitted). "Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing." *Id.*

## II.  Rule 12(b)(6)—Failure to State a Cause of Action

In the alternative, this Court concludes that even if the Plaintiffs had standing in this case, the allegations in the Amended Complaint, even taken as true, fail to satisfy the plausibility standard insofar as they do not allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As stated above, under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In this case, the Plaintiffs' Complaint alleges a

wrong—"robo-signing"—but fails to allege any participation by Litton in this alleged violation of law.

The fundamental deficiency in the Plaintiffs' Amended Complaint is its complete failure to describe with any particularity actions (or inactions) undertaken *by the defendant* Litton. With the exception of the Equal Credit Opportunity Act claim in count eight, every count in the Amended Complaint is based on actions undertaken by BGW. In this regard, the Plaintiffs have failed to show how BGW's actions are attributable to Litton. Plaintiffs merely state that "Litton is presumed to know of all BGW's activities on its behalf in the state foreclosure actions against the Named Plaintiffs and Class Members even if it never reviewed what BGW did on its behalf." Am. Compl. ¶ 78. This type of conclusory allegation is not sufficient.

Plaintiffs' Equal Credit Opportunity Act ("ECOA") claim is also deficient—albeit on legal grounds and not for want of factual allegations. Section 1691(d)(1) of that Act provides that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). Section 1691(d)(2) further provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." *Id.* § 1691(d)(2). The Plaintiffs allege that Litton took "adverse action" against them in failing to accede to the Casey's "demand" that Litton re-finance the Casey's mortgage, but never provided them with a statement of reasons for denying their application. *See* Am. Compl. ¶¶ 154-156, 27. However, Plaintiffs' ECOA claim fails under the statute, because the Caseys were already in default when they requested a loan modification, *see* Am. Compl. ¶ 27, and the ECOA

11

expressly states that the term "adverse action . . . does not include a refusal to extend additional credit under an existing credit arrangement were the applicant is delinquent or otherwise in default." 15 U.S.C. § 1691(d)(6). In paragraph 51, the Plaintiffs acknowledge that when they requested a loan modification from Litton, they were already nearly two years delinquent in their mortgage payments. The case law on this matter is clear—a creditor need not provide an adverse action notification when it denies a loan modification request by a delinquent borrower. *See e.g.*, *Mashburn v. Wells Fargo Bank, N.A.*, No. C11-0179-JCC, 2011 WL 2940363, at *6 (W.D. Wash. Jul. 19, 2011) ("Defendant's denial of the loan modification does not constitute an adverse action, because it was a refusal to extend additional credit under an existing credit arrangement where the applicant was delinquent."); *Schlegel v Wells Fargo Bank, N.A.*, 799 F. Supp. 2d 1100, 1107 (N.D. Cal. 2011); *Southern v. Golden Gate Auto Sales, Inc.*, 487 F. Supp. 2d 951, 953-54 (N.D. Ill. 2006).

In sum, this Court is unable to draw any reasonable inference that Litton is liable. The Plaintiffs' Amended Complaint therefore fails to state a claim upon which relief may be granted. Accordingly, even if the Plaintiffs had standing, Litton's motion to dismiss is nevertheless granted pursuant to Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, Litton's Motion to Dismiss First Amended Complaint (ECF No. 23) is GRANTED. Because Plaintiff's supplemental filing attached to their Motion to File Supplement in Opposition to Defendant's Motion to Dismiss (ECF No. 37) would not aid in this Court's decision, that motion is DENIED. Finally, insofar as this

Court has concluded that this action must be dismissed for want of standing and because the Plaintiffs have failed to state a claim upon which relief may be granted, the Plaintiffs' Motion for Partial Summary Judgment (ECF No. 22) is DENIED as MOOT.

A separate Order follows.

Dated: February 14, 2012.

/s/_____
Richard D. Bennett
United States District Judge